**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

RAMZI YAGHI,

                              **Plaintiff,**

   vs.                                                        1:16-cv-663
                                                                            (MAD/CFH)

**PIONEER BANK,**

                              **Defendant.**

---

APPEARANCES:                                    OF COUNSEL:

Ramzi Yaghi
26 Hamlet Court, Apt. 101
Slingerlands, New York 12159
Plaintiff *pro se*

Bond, Schoeneck & King, PLLC         MICHAEL D. BILLOK, ESQ.
22 Corporate Woods Blvd., Ste. 501
Albany, New York 12211
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 13, 2016, Plaintiff, Ramzi Yaghi, commenced this action against Defendant Pioneer Bank ("Pioneer"). Dkt. No. 1. Plaintiff's amended complaint alleges (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; (2) race, color, and national origin discrimination in violation of Title VII; (3) retaliation in violation of Title VII; (4) hostile work environment in violation Title VII; and (5) retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Dkt. No. 26 at 7-14. Plaintiff seeks compensatory and punitive damages for the injury and harm caused by Defendant, as well as costs, injunctive relief, and reinstatement. *See id.*

Currently pending before the Court is Defendant's motion for summary judgment, which Plaintiff has opposed. *See* Dkt. No. 67 & 78. For the following reasons, Defendant's motion is granted.

## II. BACKGROUND

**A.   Local Rule 7.1(a)(3)**

Local Rule 7.1(a)(3) requires a party opposing a motion of summary judgment to file a response "admitting and/or denying each of the movant's assertions" in the movant's Statement of Material Facts, and "[e]ach denial shall set forth a specific citation to the record where the factual issue arises." N.D.N.Y.L.R. 7.1(a)(3). Where the opposing party fails to follow Local Rule 7.1(a)(3), the Court shall accept the properly supported facts stated in the movant's Statement of Material Facts. *See id.* ("<u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>") (emphasis in original). While this Court must construe a *pro se* litigant's pleadings and papers liberally, and interpret them to raise the strongest arguments that they suggest, this standard "does not excuse a pro se litigant from following the procedural formalities of summary judgment," including Local Rule 7.1(a)(3). *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (citations omitted). "The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions." *Id*. (citations omitted).

While Plaintiff has submitted numbered responses to Defendant's Statement of Material Facts, Plaintiff has failed to set forth specific citations to the record supporting his denials. *See* Dkt. No. 78. Accordingly, the properly supported facts set forth in Defendant's "Rule 56 Statement of Facts" are deemed admitted for purposes of this motion. N.D.N.Y.L.R. 7.1(a)(3).

**B.   Background**

Defendant Pioneer is a savings bank with its principal place of business in Colonie, New York. Dkt. No. 67-15 at 1. Plaintiff Ramzi Yaghi was an employee at Pioneer from July 2011 through December 2014. *See id.* at 6, 19. In June 2013, Plaintiff was selected for the position of Assistant Branch Manager/Business Development Leader over four other people, none of whom were of Middle Eastern descent. *See id.* at 6.

Plaintiff applied five times to various positions with Defendant, and was not chosen for any of them. *See id.* at 16. In November 2012, Plaintiff interviewed for an Assistant Manager position at the Latham branch, during which he alleges that the interviewer, Kramer, told him that he would rather have a woman in the position. *See id.* at 17. A woman with four more years of experience than Plaintiff was ultimately selected for the position. *See id.* In February 2013, Plaintiff applied for another Assistant Branch Manager position, this time at the Clifton Park branch, and was again passed over. *See id.* at 16-17. The female candidate chosen, while not an Assistant Branch Manager like Plaintiff, had three more years of experience than Plaintiff in addition to other relevant specialized experience. *See id.* at 17. This candidate was also chosen over other female Assistant Branch Managers who had applied for the position. *See id.* In March 2014, Plaintiff applied for the position of Branch Manager at Defendant's Albany branch. *See id.* at 16. The applicant who was hired for this position had six years of experience as either Assistant Branch Manager or Branch Manager, as compared to Plaintiff's less than three years of experience as Assistant Branch Manager. *See id.* at 6-7. Finally, in July 2014, Plaintiff applied to Branch Manager positions at the Delmar and East Greenbush branches. *See id.* at 16. Both of these positions were eliminated before interviews were held as part of the branch reorganization discussed in more detail below. *See id.*

3

In July 2014, Plaintiff requested, and received, meetings with Defendant's Vice President Huerter and Branch Manager Desnoyers in order to discuss Plaintiff's desire to be promoted to Branch Manager. *See id.* at 7, 9. After talking with Plaintiff during those meetings, Huerter felt that Plaintiff had demonstrated a significant lack of judgment and professionalism both in his responses to questions presented to him during these meetings, and his complaints to subordinates concerning management afterwards. *See id.* at 7, 10. Plaintiff made no complaints to Huerter concerning discrimination during these meetings. *See id.* at 10. Plaintiff also alleges that, during this same month, Desnoyers told him to "be careful of those Arabs" in response to a vacation request to visit the Middle East. *See id.* at 17. Desnoyers, on the other hand, claims that he actually told Plaintiff to "be careful of those Arab countries, they are not as safe as they used to be." *See id.*

In August 2014, Defendant began to plan a reorganization of the management of several of its branches, wherein some of the smaller branches would be reorganized into "clusters" overseen by a single Area Branch Manager, instead of having Branch Managers assigned to each individual branch. *See id.* at 10. Huerter recommended that Plaintiff be demoted as part of this plan due to Plaintiff's conduct during and after the aforementioned meetings. *See id.* at 11. The actual decision to demote Plaintiff was made no later than September 8, 2014, and five people, including Plaintiff, were ultimately demoted. *See id*. Three of the other four demoted employees were female, none of them were of Middle Eastern origin, and none of them had recently taken FMLA leave or complained about discrimination. *See id.*

On September 15, 2014, Plaintiff emailed Human Resources complaining that women and non-minority applicants had been promoted to branch manager over him. *See id.* at 12. Shortly after the initial steps were taken by Defendant to begin the investigation into Plaintiff's complaint,

Plaintiff emailed again, on September 19, 2014, requesting a leave of absence under the FMLA to take care of his father. *See id.* Defendant approved Plaintiff's request and granted him twelve weeks of leave, ending December 11, 2014. *See id.* at 13. During this time, the investigation into Plaintiff's complaint continued, and Defendant ultimately determined that it was without merit. *See id.* at 16-18. Defendant also began implementation of the reorganization while Plaintiff was on FMLA leave. *See id.* at 14. On October 27, 2014, Defendant informed all the relevant employees about the reorganization, and gave those employees that were being transferred or demoted one day to decide whether they would continue working in their new position or take severance. *See id.* One person, Plaintiff, was instead given a week to make this decision, and on November 3, 2014, Plaintiff declined the severance offer and elected to remain with Defendant in his new position. *See id.*

On December 3, 2014, Plaintiff sent an email to Defendant asking that the FMLA leave be extended beyond the original December 11, 2014, return date. *See id.* at 18. Defendant denied this request, as it was their "general practice" not to extend to an employee more time beyond that which is required by the FMLA. *See id.* at 18-19. Plaintiff was required to report to work on December 15, 2014, but did not do so, and instead emailed Defendant on that day requesting five more weeks of FMLA leave. *See id.* at 19. In response, Defendant reiterated that they were not extending Plaintiff's FMLA leave, and stated that he must report to work on December 22, 2014, or they would consider him to have abandoned his position. *See id.* Plaintiff did not report to work on December 22, and instead sent a letter indicating that he was going to be "out of work beyond the December 22, 2014 deadline." *See id.* The next day, Defendant informed Plaintiff, via email, that the company considered him to have abandoned his position, and terminated him. *See id.*

On February 9, 2015, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On March 15, 2016, the EEOC dismissed Plaintiff's complaint and issued a Notice of Right to Sue. *See id.* at 20. Plaintiff commenced this action on June 13, 2016. Dkt. No. 1.

### III. DISCUSSION

**A.     Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has found that the court is obligated to "make reasonable allowances to protect pro se litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, "a pro se party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.    Title VII Discrimination**

Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" 42 U.S.C. § 2000e–2(a)(1). Disparate treatment discrimination claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

"To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of discrimination." *Fahrenkrug v. Verizon Servs. Corp.*, 652 Fed. Appx. 54, 56 (2d Cir. 2016) (citing *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106-07 (2d Cir. 1989)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

With respect to Plaintiff's *prima facie* case, it is undisputed that, as a Jordanian man, Plaintiff is a member of a protected class under Title VII. *See* 42 U.S.C. § 2000e-2(a). It is also

undisputed that because Plaintiff was demoted and then terminated, he was subjected to an adverse employment action. *See Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). Therefore, in order to establish a *prima facie* case of gender discrimination, Plaintiff must show that he was qualified for the position that he held and that the circumstances surrounding his demotion and termination give rise to an inference of discrimination. A plaintiff may create an inference of discrimination by showing disparate treatment, *i.e.*, by showing that his employer "treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). To create an inference of discrimination by showing disparate treatment, the plaintiff must show that he was "'similarly situated in all material respects'" to the individuals with whom he seeks to compare himself. *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

In Plaintiff's memorandum of law in opposition to Defendant's motion for summary judgment, he asserts that disparate treatment exists because he was passed over for promotion in favor of less qualified female or Caucasian candidates, he was singled out by Defendant when he was not provided a performance review, demoted, and eventually terminated. However, Plaintiff fails to demonstrate that he was similarly situated to other the other Caucasian or female employees that were promoted over him, or that he was treated differently from other such individuals. As Defendant points out, Plaintiff was far from the only Pioneer Bank employee to be demoted during the restructuring plan; rather, five people were ultimately demoted. *See* Dkt. No. 67-15 at 11. Three of the other four demoted employees were female, none of them were of Middle Eastern national origin, and none of them had recently taken FMLA leave or complained about discrimination. *See id.* Plaintiff was also not the only employee to not receive a performance review on time; in fact, Defendant's evidence shows that the person who was

8

responsible for performance reviews, Desnoyers, had not completed any performance review on time in 2014, and was months behind on multiple employees. *See id.* at 18. Nor has plaintiff provided any evidence, beyond unsupported allegations, that the candidates that were chosen for promotions were less qualified than him. Defendant's evidence shows that all five of the positions were either filled with a candidate with years more experience than Plaintiff had at the time of the hiring decision, or the position was removed without any interviews as part of the restructuring plan. *See id.* at 16-17. As such, the undisputed facts establish that Defendant is entitled to summary judgment on Plaintiff's failure to promote claim.

Even assuming that Plaintiff has met the minimal burden of establishing his *prima facie* case with regards to the decision to terminate him, the claim is still subject to dismissal. Once the plaintiff presents a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Upon the defendant's articulation of a legitimate, non-discriminatory reason, the presumption of discrimination arising from the plaintiff's *prima facie* showing "drops out of the picture." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)); *see also Weinstock v. Columbia Univ*, 224 F.3d 33, 42 (2d Cir. 2000). The Second Circuit described the plaintiff's burden at this third stage of the *McDonnell Douglas* framework as follows:

> The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.

9

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal citations and alterations omitted); *see also Kirkland v. Cablevision Systems*, 760 F.3d 223, 225 (2d Cir. 2014) (citation omitted). To rebut the articulated justification for the adverse action, "the plaintiff must show both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted). "However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment." *Diggs v. Niagara Mohawk Power Corp.*, No. 1:14-cv-244, 2016 WL 1465402, *3 (N.D.N.Y. Apr. 14, 2016) (citing *Holcomb*, 521 F.3d at 137; *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

Defendant has asserted that its legitimate, non-discriminatory reason for terminating Plaintiff was his failure to return to work after the expiration of his FMLA. *See* Dkt. No. 67-16 at 19. Indeed, after Plaintiff failed to report to work on the first return date Defendant gave him, Defendant extended the return date another week for Plaintiff, and only made the decision to terminate him after he failed to report to work on that date as well. *See* Dkt. No. 67-15 at 18-19. Plaintiff's conclusory allegations of discrimination are insufficient to rebut this legitimate, non-discriminatory reason for Defendant's actions.

Based on the foregoing, the Court finds that Plaintiff has failed to put forth sufficient evidence that would permit a rational jury to find that Plaintiff was subjected to discrimination in violation of Title VII. Accordingly, Defendant's motions for summary judgment is granted as to Plaintiff's Title VII causes of action.

C.    **Title VII Retaliation**

Courts analyze claims of Title VII retaliation according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Terry v. Ashcroft*, 336

F.3d 128, 141 (2d Cir. 2003) (citation omitted). To make out a *prima facie* case of retaliation under Title VII, a plaintiff must plausibly allege the following: "'(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Gordon v. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (quotation omitted). "Protected activity" includes any "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). Proof of causation can be shown either indirectly through circumstantial evidence, or "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*, 232 F.3d at 117. In order to show a retaliatory motive by means of circumstantial evidence, there must be temporal proximity between the adverse employment action and the protected activity. *See Muhammad v. Juicy Couture/Liz Clairborne, Inc.*, No. 09-Civ-8978, 2010 WL 4032735, *6 (S.D.N.Y. July 30, 2010). "Upon such a showing, the defendant must articulate legitimate non-discriminatory reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive." *Holt v. KMI-Cont'l,* 95 F.3d 123, 130 (2d Cir. 1996).

In the present matter, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's Title VII retaliation claim. Essential to a retaliation claim is that the employer knew about the protected activity prior to taking an adverse employment action, and that there is a causal connection between the protected activity and the adverse action. Plaintiff does not allege any adverse employment actions that occurred after the protected activity under circumstances that could give rise to an inference of retaliatory intent. Plaintiff's first relevant protected activity,

11

the email complaint to Defendant about not being promoted to Branch Manager occurred on September 15, 2014. Dkt. No. 67-15 at 12. The decision to demote Plaintiff as part of the reorganization was made no later than September 8, 2014, and the various decisions not to hire/promote Plaintiff at one of the other branches were all made in or before July 2014. *See id.* at 6-7, 16-17. Defendant's failure to provide the July 2014 performance review was also prior to Plaintiff's email. *Id.* at 18.

Finally, Plaintiff received the twelve-work weeks of leave that he was entitled to under FMLA. The fact that Defendant chose not to extend Plaintiff's leave beyond that which is required by law cannot constitute retaliation under Title VII, especially where there is no evidence that they had done so in the past. *See id.* at 19. Even though the decision to terminate Plaintiff came well after his protected activities, Defendant has advanced a legitimate non-discriminatory reason for their decision. Plaintiff was originally required to return to work after his FMLA leave on December 15, 2014. After Plaintiff failed to report to work on that date, Defendant then gave Plaintiff a second chance to return to work on December 22, 2014. *See id.* It was only after Plaintiff had again failed to report to work, and had instead sent a letter indicating that he would be "out of work beyond the December 22, 2014 deadline" that Defendant terminated plaintiff for abandoning his position. *See id.* Plaintiff has advanced no evidence that Defendant's explanations are pretext for any discriminatory motive.

Based on the foregoing, the Court grants Defendant's motion and dismisses Plaintiff's Title VII retaliation claim.

**D.     FMLA Retaliation**

The FMLA provides eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if

12

such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). At the end of a period of FMLA leave, the employee has the right to be restored to the position, or its equivalent, that he or she held prior to taking leave. 29 U.S.C. § 2614(a)(1)(A). However, this right is not absolute. "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a).

The FMLA expressly creates a private cause of action for equitable relief and money damages against any employer who violates Section 2615. *See* 29 U.S.C. § 2617(a)(2); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003). The Second Circuit recognizes two claims under the FMLA: (i) interference with FMLA rights; and (ii) retaliation for exercising FMLA rights. *See Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004); *accord Voltaire v. Homes Servs. Sys., Inc.*, 823 F. Supp. 2d 77, 90 (E.D.N.Y. 2011) ("The Second Circuit recognizes a distinction between claims which allege a violation of § 2615(a)(1) – so called 'interference' claims – and claims which allege violations of § 2615(a)(2) and (b), which are called 'retaliation' claims"); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 198-99 & n.30 (S.D.N.Y. 2009) (citing cases).

Plaintiff alleges that Defendant retaliated against him for exercising FMLA rights by failing to promote him, failing to provide a performance review, demoting him, and refusing to grant additional FMLA leave, and ultimately terminating him. Dkt. No. 26 at 13-14. To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse

13

employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168. An inference of retaliatory intent can be established "when there is a basis for a jury to conclude that 'a causal connection [exists] between the plaintiff's protected activity and the adverse action taken by the employer.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (citing *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003)); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). "Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *see also Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986).

In the present matter, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's FMLA retaliation claim. Similar to the allegations of retaliation under Title VII, essential to a retaliation claim is that the employer knew about the protected activity prior to taking an adverse employment action, and that there is a causal connection between the protected activity and the adverse action. Even assuming that Plaintiff was qualified for his position,[1] Plaintiff does not allege any adverse employment actions that occurred after the protected activity under circumstances that give rise to an inference of retaliatory intent. Plaintiff's first relevant protected activity, the application for FMLA leave, occurred on September 19, 2014. Dkt. No. 67-15 at 12. Again, nearly all of the alleged retaliatory action took place prior to Plaintiff's protected activity. In the case of Plaintiff's termination, Defendant has advanced legitimate

---

[1] During the course of discovery, Defendant found that Plaintiff had lied on his application for employment and not voluntarily left his previous job as he had listed, but rather had been terminated for "abusive" conduct towards another employee. Dkt. No. 67-15 at 1, 5. Defendant alleges that had they known about the real reason for Plaintiff's departure from his previous job, they would not have hired him. *Id.* at 5.

non-discriminatory reasons for their decision, *i.e.*, Plaintiff's abandonment of his position. Plaintiff has advanced no evidence that Defendant's explanations are pretext for any discriminatory motive. *See Grant v. Hospital Auth. of Miller City*, No. 1:15-cv-15, 2016 WL 5791546, *14 (M.D. Ga. Sept. 30, 2016) (holding that the defendant was entitled to summary judgment as to the plaintiff's FMLA retaliation claim where the plaintiff was terminated after he failed to return from the FMLA leave he had been granted by the defendant).

Based on the foregoing, the Court grants Defendant's motion and dismisses Plaintiff's FMLA claim.

### E. Title VII hostile work environment

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race],'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of any other characteristic protected by Title VII, s*ee Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).

"In determining whether conduct constitutes a hostile work environment, the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pliant*, 965 F. Supp. 2d 302, 305 (W.D.N.Y. 2013) (citations omitted). Further, "a few isolated incidents of 'boorish or offensive use of language' are generally insufficient to establish a hostile work environment." *Id.* (citations omitted).

Even construing Plaintiff's Amended Complaint and his arguments in opposition to summary judgment broadly, there are only two events that could be construed as discriminatory actions for the purposes of a hostile work environment claim. The first was when Kramer, the Branch Manager for the Latham branch, allegedly told Plaintiff that he would rather have a woman in the position that Plaintiff was interviewing for. *See* Dkt. No. 26 at 2; Dkt. No. 67-15 at 17. The second was when Desnoyers allegedly told Plaintiff to "be careful of those Arabs" when learning of Plaintiff's plans to visit the Middle East. *See* Dkt. No. 26 at 4; Dkt. No. 67-15 at 17. The Court finds that these two events, even if accepted as true for the purposes of this motion, are not sufficient as a matter of law to support a Title VII hostile work environment claim, because they do not constitute "a steady barrage of opprobrious racial comments." *Chick v. County of Suffolk*, 546 Fed. Appx. 58, 59 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Salmon*, 965 F. Supp. 2d at 306 (finding that the use of a racial slur by a coworker combined with multiple other incidents of offensive conduct over a seven-year period was not sufficient to support a hostile work environment claim); *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 601 (7th Cir. 2014) (holding that, "while referring to colleagues with such disrespectful language is deplorable and has no place in the workforce, one utterance of [a racial slur] has not generally been held to be severe enough to rise to the level of establishing liability") (citation omitted).

Based on the foregoing, the Court grants Defendant's motion for summary judgment regarding Plaintiff's Title VII hostile work environment claim.

### IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 67) is **GRANTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: October 9, 2018
      Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge